IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| NICOLA C. HUDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:12-CV-284 (MTT) |
| ) | |
| MIDDLE FLINT BEHAVIORAL ) | |
| HEALTHCARE, TODD THOMPSON, and ) | |
| DIANNE THOMASON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Before the Court is Defendant Middle Flint Behavioral Healthcare's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.[1] For the reasons stated below, the Motion is **GRANTED**.

### I. BACKGROUND

This is an employment discrimination case. The Plaintiff, an African-American female, filed this lawsuit July 18, 2012, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging wrongful termination, retaliation, and hostile work environment claims based on her race. (Doc. 1). The allegations stem from her employment at Middle Flint Behavioral Healthcare (Middle Flint), a community service board providing low cost mental health and substance abuse treatment in and around Americus.

---

[1] Defendants Todd Thompson and Dianne Thomason were dismissed as Defendants in this action on October 25, 2012. (Doc. 11).

Todd Thompson, Middle Flint's Human Resources director, hired the Plaintiff February 16, 2012, as a "Clerk I," a potentially temporary front desk position within the human resources department. (Thompson Aff., Doc. 13-1, ¶¶ 3-5; Doc. 13-1 at 9). In accepting the position, the Plaintiff signed paperwork authorizing a background investigation of her criminal, motor vehicle, and employment history, and acknowledged that information learned from the investigation could be used to fire her. (Thompson Aff., Doc. 13-1, ¶ 7; Doc. 13-1 at 11). The Plaintiff subsequently met with Dianne Thomason, a "Clerk I" who also served as Training Coordinator and was charged with orienting new hires and ensuring they had paperwork proving they met certain job requirements. (Thomason Aff., Doc. 13-2, ¶¶ 2-4; Thompson Aff., Doc. 13-1, ¶ 6; Doc. 13-2 at 6). The exact dates of these meetings are not clear.

During this orientation, the Plaintiff presented a First Aid/CPR card indicating she had completed First Aid and CPR training at Magnolia Manor Nursing Home. (Thomason Aff., Doc. 13-2, ¶ 4; Doc. 13-2 at 8). She told Thomason she had previously applied for a job as a nanny, and her prospective employer had arranged for her to obtain CPR training at Magnolia Manor. (Thomason Aff., Doc. 13-2, ¶ 5). Thomason, an Americus native whose relatives had resided at Magnolia Manor, did not believe the nursing home offered CPR training to anyone other than its employees. (Thomason Aff., Doc. 13-2, ¶ 5). Thomason contacted Magnolia Manor and discovered the Plaintiff had actually been an employee there. (Thomason Aff., Doc. 13-2, ¶ 6). However, the Plaintiff had not listed Magnolia Manor as a previous employer on her Middle Flint job application. (Thomason Aff., Doc. 13-2, ¶ 6; Doc. 13-2 at 10-13).

Thomason reported this discrepancy to Beth Ragan, Middle Flint's CEO. (Thomason Aff., Doc. 13-2, ¶ 7). Ragan then instructed Thompson to speak with the Plaintiff about her employment history, which he did on March 22, 2012. (Thompson Aff., Doc. 13-1, ¶ 8). The Plaintiff admitted to Thompson that she had worked at Magnolia Manor, but said she did not list it on her Middle Flint job application because Magnolia Manor had fired her and told her not to use the nursing home as a reference. (Thompson Aff., Doc. 13-1, ¶ 8). After this discussion, Thompson reviewed Middle Flint's policy and determined that falsifying information on a job application subjects employees to termination. Two other Middle Flint employees, including a white male, had been fired for this reason during Thompson's tenure. (Thompson Aff., Doc. 13-1, ¶ 9). The next day, March 23, Thompson met with the Plaintiff and fired her. According to Thompson, *after* he informed the Plaintiff she was terminated, the Plaintiff told him Magnolia Manor had fired her for a "bad reason" and she had filed an EEOC complaint against the nursing home. Thompson says he was unaware of the Magnolia Manor EEOC investigation prior to firing the Plaintiff, and that it had no bearing on his decision. (Thompson Aff., Doc. 13-1, ¶ 10). He further says that the Plaintiff's race played no factor in her termination. (Thompson Aff., Doc. 13-1, ¶ 12). After the Plaintiff was fired, Thompson hired an African-American female to replace her. When that woman later resigned, she too was replaced with an African-American female. (Thompson Aff., Doc. 13-1, ¶ 11).

The Plaintiff, who is proceeding pro se, has presented "evidence" in the form of her own version of events as alleged in the Complaint (Doc. 1) and a one-page

Response[2] (Doc. 14) to Middle Flint's Motion.[3]  In those filings, the Plaintiff states Thomason "intimidated and belittled" her on a daily basis, attempted to sabotage her work, and refused to relieve her to take needed bathroom breaks.  (Doc. 1 at 4).  She says she reported Thomason's behavior to Thompson on March 20, 2012, and was told "to give him some time to work on [Thomason]."  (Doc. 1 at 5).  On March 23, the Plaintiff says she again went to Thompson, this time to complain that Thomason had stolen some of her work product.  Thompson took no action, she says.  She made this complaint the day she was fired, but she does not discuss the firing itself.  (Doc. 1 at 5-6).  The Plaintiff simply states that she was "wrongfully terminated," and based on the fact that Thomason and Thompson are both white, and that she was the only African-American clerk working at that time in the Human Resources department, she concludes their behavior and her termination were racially motivated.

Thompson and Thomason reject the notion that the Plaintiff's race played a factor in any of their actions.  (Thompson Aff., Doc. 13-1, ¶ 12; Thomason Aff., Doc. 13-2, ¶ 10).  Thomason claims she never said or did anything to the Plaintiff that was race related.  (Thomason Aff., Doc. 13-2, ¶ 10).  Similarly, Thompson asserts that the Plaintiff

---

[2] The Court is aware that Fed. R. Civ. P. 56 requires parties to cite to materials in the record that are of a more traditional evidentiary nature, such as depositions, affidavits, admissions, and the like.  However, given the Plaintiff's pro se status, the Court will treat the substantive content of the Plaintiff's filings as if it were her personal testimony given by affidavit.

[3] The Plaintiff also filed a two-page Sur-reply (Doc. 17) to Middle Flint's Reply to her Response.  However, sur-reply briefs are not favored, and, moreover, the Plaintiff violated Local Rule 7.3.1.  That rule requires a party desiring to file a sur-reply brief to move in writing for permission from the Court.  The Plaintiff did not do this, and her pro se status gains her only so much leniency.  Therefore, because the Plaintiff filed her Sur-reply without leave of the Court, it will not be considered.  Notably, even had the Court accepted her Sur-reply, it would not have changed the outcome of this Order.

never complained to him that Thomason was behaving in a way that could be perceived as racially motivated. (Thompson Aff., Doc. 13-1, ¶ 13). He also adds that in the two years he has worked at Middle Flint, he has not received complaints from any other African-American employees about Thomason, nor has he observed Thomason engage in any racially insensitive behavior. (Thompson Aff., Doc. 13-1, ¶¶ 14-15).

As for the Plaintiff, the only factual evidence presented by Middle Flint that she disputes is Thompson's knowledge of the Magnolia Manor EEOC investigation. (Doc. 14). She claims she made Thompson aware of the Magnolia Manor EEOC investigation prior to her termination, and that his knowledge of the investigation is the reason he fired her. (Doc. 14).

## II.  DISCUSSION

### A.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy her burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255.

### B.   McDonnell Douglas Framework

A Title VII plaintiff may prove her case directly or circumstantially.  Here, there is no direct evidence of discrimination, so the Plaintiff must rely on circumstantial evidence.  The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, the test for which differs slightly for each claim.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Texas Dept. of Community Affairs v. Burdine*, 450

U.S. 248, 254-55 (1981).  This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons," but must produce evidence to raise a genuine issue of fact as to whether it discriminated against the plaintiff.  *Kragor v. Takeda Pharmaceuticals America, Inc.*, ___ F.3d ___, 2012 WL 6618360 at *2 (11th Cir.) (emphasis added).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination.[4]  "The plaintiff can show pretext 'either directly by

---

[4] The sometimes conflicting views regarding pretext may be due to the general confusion that has existed regarding the plaintiff's burden when faced with a summary judgment motion.  Citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993), some courts suggest that a plaintiff responding to an employer's motion for summary judgment must prove that the employer's legitimate, nondiscriminatory reason is false *and* that discrimination was the real reason for the employer's action.  *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 587 (6th Cir. 2009); *Maxfield v. Cintas Corp. No. 2,* 427 F.3d 544, 550-51 (8th Cir. 2005); *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).  However, the Supreme Court in *St. Mary's* did not address a plaintiff's burden at the summary judgment stage.  Rather, the Court addressed whether an employee is entitled to judgment as a matter of law when the factfinder has concluded that the employer's nondiscriminatory reason is false, but nevertheless found that the employer did not intentionally discriminate against the plaintiff.  Moreover, as noted by Judge Wilson in his concurring opinion in *Convoy v. Abraham Chevrolet-Tampa, Inc.,* 375 F.3d 1228, 1236 (11th Cir. 2004), the Supreme Court in *St. Mary's* "flatly rejected the so-called 'pretext-plus' approach to discrimination analysis, which had required the plaintiff not only to demonstrate that the employer's asserted reasons were pretextual, but also to introduce additional evidence of discrimination."  In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000), the Supreme Court disposed of any lingering viability of pretext-plus analysis.  While it is true the plaintiff must ultimately prove intentional discrimination, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."  *Id.* at 147 (emphasis in original).  In a concurring opinion, Justice Ginsburg, in a summary of the majority's holding, wrote that a plaintiff "*may* survive judgment as a matter of law by submitting two categories of evidence:  first, evidence establishing a 'prima facie case,' …; and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false."  *Id.* at 154 (emphasis in original); *see also Dulin v. Bd. of Com'rs of Greenwood Leflore Hosp.*, 657 F.3d 251 (5th Cir. 2011).  Clearly, at the summary judgment stage, the plaintiff, in rebutting the employer's proffered legitimate, nondiscriminatory reason, does not shoulder the burden of producing evidence both of falsity and that the real reason was discrimination.  Indeed, the *McDonnell Douglas* test is all about proving intentional discrimination by circumstantial evidence; if the employee had direct

persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Kragor*, 2012 WL 6618360 at *2 (quoting *Burdine*, 450 U.S. at 256).  Put another way, "[a] plaintiff may … survive summary judgment by 'presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, non-discriminatory reasons.'" *Freeman v. Perdue Farms Inc.*, 2012 WL 5458189 at *4 (11th Cir.) (quoting *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 965 (11th Cir.1997)).

### C. Plaintiff's Title VII Claims

#### 1. Wrongful Termination

An employer may not "discharge any individual … because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  To prove she was discharged because of her race, the Plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for her position; (3) she was terminated; and (4) she was replaced by a person outside of her protected class.  *Freeman*, 2012 WL 5458189 at *4.  *See also Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).

For the sake of argument, the Court accepts that the first three elements are satisfied.  As an African-American woman, the Plaintiff is a member of a protected class.  She was qualified for her position, as evidenced by her hiring, and she was terminated, as evidenced by her firing.  But the Plaintiff cannot meet the fourth requirement because she has not shown, nor even alleged, that she was replaced by a

---

evidence that the real reason for the adverse employment action was discrimination, the employee would have no need to resort to the *McDonnell Douglas* test.

person outside of her protected class.  Moreover, Middle Flint has through Thompson's affidavit produced evidence that it replaced the Plaintiff with another member of her protected class: "After terminating Ms. Hudson, I filled her position with another African-American female.  She later resigned the position and I subsequently replaced her with another African-American female." (Thompson Aff., Doc. 13-1, ¶ 11).  Thus, there is no genuine dispute as to whether the Plaintiff was replaced by a person outside of her protected class.  She was not.  Therefore, the Plaintiff has no prima facie case of wrongful termination.

Accordingly, summary judgment for Middle Flint as to the Plaintiff's wrongful termination claim is **GRANTED**.

### 2. Retaliation

An employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima face case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006). As previously observed, the Plaintiff's court filings are sparse, so the factual basis and parameters of her retaliation claim are vague.  Construed generously, it appears she intends to assert two distinct retaliation claims: one based on the EEOC complaint she

filed against Magnolia Manor and a second based on informal grievances she made to Thompson about Thomason's conduct.

### a) The Magnolia Manor EEOC Complaint

The Plaintiff contends that at some point during her employment, Middle Flint discovered she filed an EEOC complaint against her former employer, Magnolia Manor, and for that reason fired her. For the sake of argument, the Court accepts the filing of the Magnolia Manor EEOC complaint as statutorily protected expression and the Plaintiff's termination as an adverse employment action. Causation, however, is less clear. To establish a causal connection, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Generally, this demonstration can be made by circumstantial evidence, such as close temporal proximity between the Magnolia Manor EEOC filing and the Plaintiff's firing. *Id.* But at the very least, the Plaintiff must show the decision maker – Thompson – was aware of her protected conduct – the Magnolia Manor EEOC filing – when he fired her. *Id.* When there is unrebutted evidence that the decision maker did not know about the employee's protected conduct, temporal proximity is not enough. *Id.*

Here, Thompson has provided sworn testimony that the Plaintiff did not tell him about the Magnolia Manor EEOC filing until after he met with and fired her March 23. (Thompson Aff., Doc. 13-1, ¶ 10). The Plaintiff responds that "Mr. Thompson was well aware of the ongoing investigation involving Magnolia Manor and the EEOC, which was active before and during my employ at Middle Flint Behavioral Healthcare. I made Mr. Thompson aware of that issue prior to him terminating me." (Doc. 14). This broad

allegation, contained within her responsive motion and without the support of or citation to any evidence, is the Plaintiff's only answer to Thompson's testimony. It is devoid of specifics, and does not state how, when, or where she made him aware of this fact. Nevertheless, the Plaintiff's statement may serve as evidence that creates a genuine dispute as to whether Thompson knew about her prior EEOC complaint against Magnolia Manor. That Thompson had this knowledge would allow a reasonable jury to find a causal relationship between the Plaintiff's filing of the Magnolia Manor EEOC complaint and her firing from Middle Flint. Therefore, a reasonable jury may find the Plaintiff able to prove a prima facie retaliation claim against Middle Flint based on her Magnolia Manor EEOC complaint.

However, Middle Flint has offered a legitimate, nondiscriminatory reason for firing the Plaintiff, and there is no evidence to suggest this reason is pretext for discrimination. Specifically, it is Middle Flint's policy to fire employees who falsify information on their job application. States Thompson: "To my knowledge, not disclosing a prior job has resulted in termination every time it was discovered. During my time at Middle Flint, two other individuals were terminated for dishonesty regarding prior employment. One such individual is a white male." (Thompson Aff., Doc. 13-1, ¶ 9). This is an entirely credible reason for terminating the Plaintiff. *See, e.g.*, *Jarvis v. Siemens Medical Solutions USA, Inc.*, 460 Fed. Appx. 851, 856 (11th Cir. 2012) (falsification of timecard was legitimate, nondiscriminatory reason for firing plaintiff); *Masso v. Miami-Dade Cnty.*, 247 Fed. Appx. 190, 192 (11th Cir. 2007) (falsification of employment application was legitimate, nondiscriminatory reason for not hiring plaintiff).

According to Thompson, when he confronted the Plaintiff on March 22, she admitted to him she had worked at Magnolia Manor but omitted it from her job application because she had been fired and told not to list the nursing home as a reference. (Thompson Aff., Doc. 13-1, ¶ 8). The Plaintiff does not dispute that she worked there, does not dispute that she omitted Magnolia Manor from her job application, and does not dispute Thompson's account of this portion of their March 22 conversation. Nor does she dispute that it is Middle Flint's policy to fire employees who falsify their job application or that Middle Flint has fired employees in the past for this reason. In short, the Plaintiff has made the conclusory allegation that Thompson "is guilty" of firing her because he knew about her Magnolia Manor EEOC complaint, but she has produced no evidence to contradict Middle Flint's stated reason for firing her. Thus, she has not produced evidence to suggest that reason is pretextual.

Accordingly, summary judgment for Middle Flint as to the Plaintiff's Magnolia Manor EEOC complaint retaliation claim is **GRANTED**.

### b) Complaints About Thomason's Behavior

The Plaintiff alleges in her Complaint that she was wrongfully terminated "after I made complaints to my supervisor, [Thompson], about being subjected to a very hostile work environment in which I was intimidated and belittled by my co-worker, [Thomason], on a daily basis." (Doc. 1 at 4). Her court filings do not make clear the number, timing, or form of these complaints. Only two are described with any particularity: On March 20, after Thomason allegedly refused to relieve the Plaintiff for a break, the Plaintiff states she "basically begged and pleaded with [Thompson] to do something about [Thomason] because I needed my job and she mistreats me and makes me feel

uncomfortable." (Doc.1 at 5). On March 23, the day she was fired, the Plaintiff complained to Thompson that Thomason had taken data entry work from her desk.

Title VII protects an employee's ability to oppose "an unlawful employment practice," such as racially motivated harassment. See 42 U.S.C. § 2000e-3(a). But "unfair treatment, absent discrimination based on race … is not an unlawful employment practice under Title VII." *Coutu v. Martin Cnty. Bd. of Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995). Therefore, to show her informal grievances were statutorily protected expression, the employee "'must not only show that [s]he *subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented.'" *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 857 (11th Cir. 2010) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Here, for the sake of argument, the Court accepts the Plaintiff subjectively felt Thomason treated her unfairly because of her race. But, in light of the facts and record, this belief is not objectively reasonable.

First, Thomason's alleged behavior has no visible racial component. Moreover, the Plaintiff never states that Thomason's behavior was discriminatory or racially motivated, or that she reported it as such. At best, she vaguely suggests this implication through two statements she appears to apply to her action generally: "[Thompson and Thomason] are both white and I am black." (Doc. 1 at 4); "Of all the African-American females whom [Thompson] has claimed to have hired, I was the only African-American clerk in the Human Resources Department." (Doc. 14). Thus, although Thomason's alleged actions may have been mean spirited, there are no facts

tying them to racially discriminatory conduct. *See, e.g.*, *Turner v. Ga. Sec'y of State*, 848 F. Supp. 2d 1361, 1381 (M.D. Ga. 2012) (conduct was disrespectful, unprofessional and harassing, but there were no allegations or evidence that it was based on the plaintiff's race).

Second, that the Plaintiff is black and her colleague and supervisor white is not in itself evidence of racial discrimination. The alleged harassment here could just as easily have been prompted by a personality conflict between the Plaintiff and Thomason. And, importantly, "'[p]ersonal animosity is not the equivalent' of the type of harassment prohibited by Title VII, and the plaintiff cannot turn a 'personal feud' into such a Title VII claim." *Alhallaq v. Radha Soami Trading, LLC*, 484 Fed. Appx. 293, 296 (11th Cir. 2012) (quoting *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986)).

Finally, Thomason specifically testifies, without contradiction by the Plaintiff, that she did not act in a racially-motivated manner toward the Plaintiff:

> I never in any way said or did anything in regards to Ms. Hudson that was in any way related to her race. I never uttered any racially offensive words or phrases. No one has ever complained that any of my conduct or utterances have been racially offensive or complained that any of my actions have been racially motivated.

(Thomason Aff., Doc. 13-2, ¶ 10). Similarly, Thompson, also without contradiction by the Plaintiff, states that the Plaintiff never reported conduct that was racially discriminatory:

> At no time did Ms. Hudson complain to me that Dianne Thomason had uttered any racially offensive words or phrases. At no time did Ms. Hudson complain that Dianne Thomason or anyone else had made any racially suggestive, charged or offensive statements. At no time, did Ms. Hudson complain to me of any behavior by Dianne Thomason or anyone else that could in any way be perceived or interpreted as racially motivated.

(Thompson Aff., Doc. 13-1, ¶ 13). Given the absence of any evidence that Thomason's behavior was racially motivated, no reasonable jury could find that the Plaintiff's complaints about Thomason's behavior were statutorily protected expression. Moreover, even if the Plaintiff had engaged in protected expression, she did not tell Thompson, or any other Middle Flint decision maker, that Thomason's behavior was racially motivated. If Thompson did not know that the conduct about which the Plaintiff complained was discriminatory, the Plaintiff cannot demonstrate a causal connection between her discharge and her protected expression. Therefore, she cannot make out a prima facie case for retaliation.

Of course, even if she could make out a prima facie case, it is clear the Plaintiff has not provided sufficient evidence to raise a material dispute that Middle Flint's legitimate, nondiscriminatory reason for firing her is pretextual.[5]

Accordingly, summary judgment for Middle Flint as to the Plaintiff's retaliation claim based on her complaints about Thomason is **GRANTED**.

### 3. Hostile Work Environment

An employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To demonstrate a hostile work environment, a plaintiff must prove "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"

---

[5] *See* section II.c.ii.1, *supra*.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). This means the Plaintiff must show:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee …; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Id.* But the only element the Plaintiff has clearly established is the first – as an African-American woman, she belongs to a protected group. Beyond that, her hostile work environment claim struggles. The Plaintiff alleges she was subject to unwelcome harassment, stating in her Complaint that Thomason "intimidated and belittled" her on a daily basis, attempted to sabotage her work, and refused to relieve her to take needed bathroom breaks. (Doc. 1 at 4). Middle Flint, other than a general denial in its Answer to the Plaintiff's allegations, does not specifically address whether Thomason engaged in such behavior.

But even if the harassment took place, the Plaintiff has offered no evidence the harassment was based on her race.[6] She has also failed to produce sufficient evidence the alleged harassment was "severe or pervasive." This requirement has subjective and objective components, requiring the work environment to be one a reasonable person would find hostile and abusive, as well as one the plaintiff subjectively perceives to be abusive. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). Courts considering the objective element look at "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or

---

[6] *See* section II.c.ii.2, *supra.*

humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* Here, the Plaintiff states that she felt intimidated and belittled by Thomason. This may indicate a subjective perception of a hostile and abusive environment, but it does not establish one that is objectively so. For that, she must rely on her allegation that "on numerous occasions" Thomason refused to relieve her for breaks, and on her allegation that Thomason once tampered with her work by taking data entry documents from her desk.

However, even if the Court accepts that these events occurred, they do not create objective hostility and abuse. Title VII is not a general civility code for the workplace, and its protections "do not extend to everything that makes an employee unhappy." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1242 (11th Cir. 2001) (internal quotation marks and citation omitted). The accusation that Thomason did not relieve the Plaintiff for breaks on "numerous occasions" is non-specific as to the frequency of the conduct. Without other evidence, the Court cannot say this happened merely more than once, or whether it occurred weekly, daily, or multiple times per day. Moreover, on its face, this conduct is childish and petty but not particularly severe. There were no physical threats or humiliations involved. Further, the Plaintiff does not allege that Thomason, also a "Clerk I," was anything other than a peer. Nothing suggests the Plaintiff's job performance suffered from this treatment, or that her employment would have been adversely affected had she simply ignored Thomason's behavior and taken the breaks she was entitled to.

Similarly, the fact that Thomason once took documents from the Plaintiff's desk is insufficient to create a hostile work environment. The Plaintiff says this incident took

place March 23, 2012, which, notably, is the day she was fired. So aside from the fact this occurred only once and was not physically threatening or humiliating, any interference with the Plaintiff's work performance this alleged pilfering might have caused was negated by her firing shortly thereafter.

Consequently, the Plaintiff has not produced any evidence from which a reasonable jury could conclude that she was exposed to racially based harassment that permeated the work place, or that the harassment was so pervasive and severe as to alter the terms and conditions of her employment. Accordingly, summary judgment for Middle Flint as to the Plaintiff's hostile work environment claim is **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, Middle Flint's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**, this 23rd day of January, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
